MRS. ROBERT L. MITCHELL, JR., ADMINISTRATRIX OF ROBERT L. MITCH-
ELL, JR., DECEASED, v. LAWRENCE MELTS AND FLORENCE MELTS,
T/a MELTS BAKERY AND S. W. HENDRIX.

(Filed 23 January, 1942.)

**1. Death § 7—**

In an action for wrongful death based upon negligence plaintiff must
show failure on the part of defendant to exercise proper care in the per-
formance of some legal duty which the defendant owed plaintiff's intes-
tate under the circumstances in which they were placed, and that such
negligent breach of duty was the proximate cause of the injury which
caused death.

**2. Negligence § 5—**

The proximate cause of an injury is that cause which produces the
result in continuous sequence and without which it would not have oc-
curred, and one from which any man of ordinary prudence could have
foreseen that such result was probable' under all the facts as they existed.

**3. Trial § 24—**

In order to resist nonsuit, plaintiff must offer legal evidence tending
to establish every material fact necessary to support a verdict, and evi-
dence which leaves any one of them in mere speculation or conjecture is
insufficient.

**4. Negligence § 19a—**

In negligence actions, nonsuit must be sustained if plaintiff's evidence
fails to establish either negligence or proximate cause.

**5. Negligence § 17b: Trial § 19—**

Whether there is enough evidence to support a material issue is a
question of law.

**6. Automobiles § 12d—**

In determining whether the scene of an accident in a municipality is
in a residential or business district or neither, the character of the prop-
erty along an intersecting street, although within 300 feet of the accident,
should not be considered, since such property is not "contiguous" thereto.

**7. Same—**

In determining whether the scene of an accident is in a residential or
business district or neither, ordinarily, only the character of the property
fronting on both sides of the street in the particular block in which the
accident occurs can be considered, since the character of the property
fronting on one block may be entirely different from that fronting upon
the adjoining block.

**8. Same—**

Uncontradicted testimony that only two business buildings front on the
street in the block in which the accident occurred and that both of them
together comprise not more than 40 feet frontage, establishes as a matter
of law that the *locus in quo* *is* not a business district as defined by
statute. Public Laws 1939, ch. 275, sec. 1 (a).

MITCHELL v. MELTS.

**9. Same—**

Where the evidence establishes that the scene of the accident was not in a business district as defined by statute, and there is no evidence that defendants' vehicle was being driven in excess of 20 miles an hour, whether the accident occurred in a residential district as defined by Public Laws 1939, ch. 275, sec. 1 (d), is immaterial, since such speed does not violate the statutory restriction. Public Laws 1937, ch. 407, sec. 103.

**10. Automobiles § 18f—**

Testimony that defendants' vehicle was traveling at least 20 miles an hour but less than 30, that the witness did not know how much more than 20 miles, that his estimate was guesswork, and that he could not say how much more than 20 miles an hour the vehicle was traveling, amounts to no more than that the speed of the car was 20 miles an hour, since if the witness does not know how much the car was exceeding a speed of 20 miles an hour the jury should not be permitted to hazard a guess on his testimony.

**11. Automobiles § 17—**

The mere fact of the skidding of an automobile does not in itself establish negligence, the doctrine of *res ipsa loquitur* being inapplicable.

**12. Negligence § 17a—**

Negligence is not to be presumed from the mere fact of injury.

**13. Automobiles § 18g—Failure to see pedestrian does not establish negligence in absence of evidence that driver could or should have seen him.**

Plaintiff's evidence tended to show that defendants' truck was being operated about 20 miles an hour in a municipality outside of a business district, and hit intestate as he was crossing the street, and that the driver of the truck failed to see intestate before striking him. *Held:* In the absence of evidence as to when intestate got on the street, how long he had been on the street before he was struck, and where he was or what he was doing just before he was struck, defendants' motion to nonsuit was properly allowed, since the evidence fails to establish excessive speed, and the fact that the driver did not see intestate is insufficient to establish negligence in the absence of evidence that intestate was in a position where the driver of the truck could or should have seen him.

APPEAL by plaintiff from *Pless, J.,* at 19 May, 1941, Civil Term, of GUILFORD.

Civil action to recover for alleged wrongful death. C. S., 160-161.

Plaintiff, in her complaint, alleges: (1) That at about 7:40 p.m. on 26 September, 1940, her intestate, Robert L. Mitchell, Jr., while in the act of crossing Walker Avenue in the city of Greensboro, North Carolina, from south to north, and when he had gotten nearly across, he was stricken and fatally injured by a Dodge truck, owned by defendants Lawrence Melts and Florence Melts, partners, trading as Melts Bakery, operated by defendant S. W. Hendrix, traveling westwardly along Walker Avenue, while he, said Hendrix, agent and chauffeur of said partners trading as aforesaid, was "in the prosecution of their business and acting

within the scope of his authority," as the proximate result of the negligence of said Hendrix, in that he drove said Dodge truck upon the highway, (a) carelessly and heedlessly, in willful and wanton disregard of the rights or safety of others and without due caution and circumspection and at a rate of speed and in a manner so as to endanger the life of intestate of plaintiff and other persons on the highway, in violation of law.; (b) at a speed greater than was reasonable and prudent under the conditions existing at the time in violation of the statute, Michie's Code, 1939, sec. 2621 (288); (c) though he saw, or ought to have seen, plaintiff's intestate crossing Walker Avenue, he failed (1) to give him any warning of the approach of said truck by sounding a horn or other device, and (2) to exercise proper precaution upon observing the intestate upon the street, in violation of the statute, Michie's Code, 1939, sec. 2621 (320); and (d) failed (1) to keep a proper lookout for intestate, and (2) to exercise reasonable care to avoid striking him after seeing him crossing the street.

Defendants deny plaintiff's allegations of negligence against them, and plead negligence of intestate in bar of plaintiff's right to recover herein.

In the trial court evidence for plaintiff tends to show substantially these facts: On 26 September, 1940, about 7:40 p.m., Robert L. Mitchell, Jr., intestate of plaintiff, while going from south side to north side of Walker Avenue, west of its intersection with Spring Street and the Cape Fear and Yadkin Valley Railroad, in the city of Greensboro, North Carolina, was stricken by a truck of defendant Florence Melts, trading as Melts Bakery, and operated by defendant S. W. Hendrix, as agent, and on business of said bakery, traveling west on the north, or its right-hand side of Walker Avenue.

Walker Avenue runs in general direction of east and west. It is thirty-two feet wide and is straight for several hundred feet. Spring Street runs in general direction of north and south. The Cape Fear and Yadkin Valley Railroad track crosses said intersection on diagonal course from southeast corner of the intersection to northwest corner thereof. Edgeworth Street is the next street to the east, and Cedar Street is next to, west of, and paralleling Spring Street, and crossing Walker Avenue. The blocks are approximately three hundred feet. There are stop signs on Spring Street, both north and south of Walker Avenue. There is a red caution light on Walker Avenue, about the middle and over the intersection, that flashes red on Spring Street, but "it is not a stop and go sign." Whether the avenue is marked with "pedestrian aisle," the evidence fails to disclose. On the north side of the avenue, west of the railroad right of way, and about one hundred to one hundred fifty feet therefrom, there is located the Ivory Store with a series of lights on what is known as a canopy, which give "a very bright light."

MITCHELL v. MELTS.

Regarding the *situs* of the accident: The witness Jas. P. Patten, who was sitting facing southeast in the front room of his home, which fronts north, on the southwest corner of Walker Avenue and Spring Street, testified, that "hearing brakes" he threw back the curtain and shade and "just at the split second" saw the car traveling westward hit intestate; that at that time intestate was approximately ten feet from the west rail of the railroad track, and five feet from the north curb of Walker Avenue; that though he "would not be exactly sure" he would say that the car went "approximately thirty-five feet before it came to a stop"; and that the body fell, near the curb, about fifteen feet beyond the car.

On the other hand, the witness L. G. Edwards, who, traveling south on Spring Street, had stopped for the traffic, including the truck, to go by, testified: "I will say it is around fifty or fifty-five feet west of the west curb line of Spring Street where the impact occurred," and the body was lying in the street about twelve or fifteen feet in front of the truck.

The witness, M. S. Robinson, city traffic officer, testified, that he arrived after the accident had happened and the body removed; that on the north side of the center of Walker Avenue, well on the right proceeding west, and beginning at about the west rail of the railroad, at a point approximately in line with the west curb of Spring Street, if extended across Walker Avenue, there were light parallel skid marks west for twenty feet, then a break with no such marks for about the same distance, then heavy parallel skid marks for nine feet, then at the length of a car, fifteen feet further, a little closer to the curb than the skid marks, water had leaked from the radiator, and fifteen feet further on, over toward and still closer to the curb was a blood spot where the body had come to rest; that the total distance from where the marks started to the water spot was sixty-four feet, and to the blood spot seventy-nine feet; that the right-hand skid marks, going west, were parallel to and within seven feet of the north curb; and that he found no marks of any other kind made by this truck, other than those described.

There was evidence tending to show that the right headlight of the truck was broken and that the radiator and grill work of it were pushed in, and that the right shoulder, hip and back of intestate were struck; and that "his right arm was crushed to a pulp, . . . he had internal injuries . . . the back of his head and right side of his temple . . . hurt . . . the right side of his head was crushed." He died four hours later.

Regarding question as to whether the accident occurred in a business or in a residential district: The witness Robinson, traffic officer, described the conditions in detail, in substance, as follows: (1) As to Walker Avenue: (a) On the north side and within one hundred fifty feet west of the intersection, there is no business house except the Ivory

Store and a vacant store, the two having total frontage of not more than forty feet. The Ivory Store is from one hundred to one hundred fifty feet west of the railroad right of way. From it and the vacant store west it is residential, and on the same side, east of the intersection and within one hundred fifty feet therefrom there are three business places, an antique shop, a store and a garage, fronting sixty to seventy feet and from there on to Edgeworth Street about 200 feet it is vacant or residential. (b) On the south side and within one hundred fifty feet west of the intersection "there is nothing except residences . . . about equally spaced"; and on same side east of the intersection, beginning thirty or forty feet from the intersection, there are the McClamroch building, a feed store with frontage of about forty feet, and a little service station—it is "solidly business property."

(2) As to Spring Street: (a) On the east side north of the intersection after passing business building which faces on the north side of Walker Avenue and runs back seventy-five feet, it is residential for the remainder of the distance of one hundred fifty feet. On same side south of the intersection there is no place of business or business establishment within one hundred fifty feet from the fifty or sixty feet frontage occupied by the Worth Distributing Company. (b) On the west side north of the intersection only about twenty feet of one hundred fifty feet adjacent thereto is used for business and the rest is residential; and on the same side south of the intersection, it is "purely residential all of the way."

Summarizing, this witness said: "You asked me, after I have gone over all the approaching intersecting streets at this point, from every angle of it within one hundred fifty feet of this intersection, it is more residential in each direction than business. In every direction it would be more than fifty per cent residential." Then, on re-direct examination, the witness states: "Beginning at a point twenty feet west of the railroad and extending back eastward three hundred feet there are no residences facing Walker Avenue. Within that three hundred feet . . . there are four business dwellings on the north side and three on the south side . . . McClamroch, Smith Company, the feed store and the service station. In that area you have just directed there are as many or as much as seventy-five per cent of the places occupied by business dwellings."

Regarding speed of truck: The witness L. G. Edwards, as above stated, traveling in an automobile south along Spring Street, testified: "As I came to the intersection of the two streets I pulled up to Walker Avenue and stopped for the traffic to go by. I saw Melts Bakery truck pass and just as it passed I heard the impact. I do not recall that I heard a horn blow. I was close enough to hear . . . Of course they do

blow, and I did not pay any attention if it blew. . . . As the . . . truck passed in front of me, I was on the side view of it and it is somewhat guesswork . . . say it was going about twenty miles or more an hour. It was not going over thirty, and I think between twenty and thirty would be about right." Then, continuing, on cross-examination, "If I had to fix a speed that conformed to my best opinion . . . the speed of the . . . truck when it crossed that intersection . . . well, it is like I said, Mr. Boren, it was a side view. I was sitting on the side where it was going to the right in front of me and it looked like as it dashed by that it was about twenty or maybe a little more . . . I don't know about that . . . it was not over thirty, but I do think it was twenty. I think it was going at least twenty miles an hour, and don't think it was going over thirty . . . I will not say because, honestly, I don't know. I had a side view of it . . . I do think it was going twenty and may have been going a little more." Then, on re-direct examination, "I think it was going as much as twenty, and don't think it was going thirty . . . between twenty and thirty, I would say."

As to traffic conditions: While the witness Edwards testified that he stopped on Spring Street to let traffic proceeding east and west along Walker Avenue go by, the witness E. L. Robbins testified that he was in his automobile about at intersection of Cedar Street and Walker Avenue, a block three hundred feet west of where the accident happened, traveling east on the avenue; that there was no car immediately ahead of him at the time and the road was pretty clear; and that the first thing he noticed was when he heard the impact and saw the headlights go out; that his car and the truck were the only two vehicles in the block; that he did not hear any horn blow; that he would not say that it did not blow, that he does not remember hearing it; that it was dark enough to have lights on automobile, "and the cars traveling on Walker Avenue did have all lights on."

The witness J. W. Gaither, arriving after the accident, testified: "I did not pay any particular attention to the front end of the truck other than the right headlight was out."

The plaintiff, Mrs. Mitchell, testified that, at the hospital that night, defendant Hendrix, in presence of defendant Florence Melts, told her "he was sorry that he had hit him but he said he did not see him until he hit him."

Further, the witness R. M. Brooks testified that, at hospital, Mrs. Melts said, "I am sorry it happened . . . what was he doing in the street?" and asked Hendrix if he saw him, and he said: "No, I am very sorry it happened. I did not see him until I had run into him." (This testimony was admitted only as against defendants Florence Melts and S. W. Hendrix.)

From judgment as in case of nonsuit as to each and all defendants at close of plaintiff's evidence, plaintiff appeals to Supreme Court and assigns error.

*Frazier & Frazier for plaintiff, appellant.*
*Hines & Boren for defendant, appellee.*

WINBORNE, J.   When the evidence shown in the record, portraying the factual situation surrounding the death of plaintiff's intestate, is taken in the light most favorable to plaintiff, and giving to him the benefit of every reasonable inference therefrom, we are of opinion that plaintiff fails to show actionable negligence.

In an action for recovery of damages for wrongful death resulting from actionable negligence, the plaintiff must show: First, that there has been a failure on the part of defendant to exercise proper care in the performance of some legal duty which the defendant owed plaintiff's intestate under the circumstances in which they were placed; and, second, that such negligent breach of duty was the proximate cause of the injury which produced the death—a cause that produced the result in continuous sequence, and without which it would not have occurred, and one from which any man of ordinary prudence could have foreseen that such result was probable under the facts as they existed.   *Whitt v. Rand,* 187 N. C., 805, 123 S. E., 84; *Murray v. R. R.,* 218 N. C., 392, 11 S. E. (2d), 326; *Mills v. Moore,* 219 N. C., 25, 12 S. E. (2d), 661, and cases cited.   *White v. Chappell,* 219 N. C., 652, 14 S. E. (2d), 843; *Reeves v. Staley, ante, 573.*

There must be legal evidence of every material fact necessary to support a verdict, and the verdict "must be grounded on a reasonable certainty as to probabilities arising from a fair consideration of the evidence, and not a mere guess, or on possibilities."   23 C. J., 51; *S. v. Johnson,* 199 N. C., 429, 154 S. E., 730; *Denny v. Snow,* 199 N. C., 773, 155 S. E., 874; *Shuford v. Scruggs,* 201 N. C., 685, 161 S. E., 315; *Rountree v. Fountain,* 203 N. C., 381, 166 S. E., 329; *Allman v. R. R.,* 203 N. C., 660, 166 S. E., 891; *Cummings v. R. R.,* 217 N. C., 127, 6 S. E. (2d), 837; *Mercer v. Powell,* 218 N. C., 642, 12 S. E. (2d), 227; *Mills v. Moore,* 219 N. C., 25, 12 S. E. (2d), 661.

If the evidence fail to establish either one of the essential elements of actionable negligence, the judgment of nonsuit must be affirmed. Whether there is enough evidence to support a material issue is a matter of law. *Mills v. Moore, supra.*

At the outset: Is there evidence in instant case that defendant's truck was being operated in violation of the speed limit?   The answer to this question is dependent upon whether the accident occurred in a business district or in a residential district.

A business district as defined in subsection (a) of section 1 of chapter 275, Public Laws 1939, is "The territory contiguous to a highway where seventy-five per cent or more of the frontage thereon in a distance of three hundred (300) feet or more is occupied by buildings in use for business purposes."

A residential district, as defined in subsection (d) of said section of said Act is "The territory contiguous to a highway not comprising a business district, where seventy-five per cent or more of the frontage thereon for a distance of three hundred (300) feet or more is mainly occupied by dwellings, or by dwellings and buildings in use for business purposes."

"Contiguous," as defined by Webster, means "in actual contact; touching; also, near, though not in contact; neighboring; adjoining; near in succession." Hence, the phrase "territory contiguous to a highway," as used in the statutes above, simply means the land lying along and adjoining and on either one or both sides of a highway. Manifestly, however, as so used, the term does not include the adjoining land covered by a crossing highway. Thus, that part of a highway comprising an intersection may not properly be considered in applying the statute to any given locality. To be a business district at least seventy-five per cent of the frontage of the territory contiguous to a highway in a distance of three hundred feet must be occupied by buildings in use for business purposes. Public Laws 1939, chapter 275, section 1 (a). To be a residential district two things must concur: (1) The territory contiguous to a highway must not comprise a business district as defined by the statute. (2) At least seventy-five per cent of the frontage of the territory contiguous to the highway for a distance of three hundred feet or more must be mainly occupied by dwellings, or by dwellings and buildings in use for business purposes. Public Laws 1939, chapter 275, section 1 (d).

The question then arises as to how the three hundred feet referred to in the statutes shall be measured. Pertinent to situation in hand, as cities and towns are usually laid off into streets and blocks, and as intersections are not within the purview of the statutes, the particular blocks contiguous to the street on which an accident occurs may be said to properly comprise the territorial limits within which to measure the three hundred feet specified in the statute. Certainly a proper admeasurement including a street intersection would be improper. It is conceivable, and in observation it is a fact, often, that the frontage in one block may be wholly occupied by buildings in use for business purposes, while in the very next block the whole frontage may be occupied by dwellings, or by dwellings and buildings in use for business purposes, or not occupied at all.

In the present case the accident admittedly having occurred on Walker Avenue west of its intersection with Spring Street, we are of opinion and hold that the occupancy of the territory in the blocks contiguous to that particular section of that avenue affords the answer to the question as to whether the accident occurred in a business district, or in a residential district, or in neither. Whatever may be the occupancy of the frontage contiguous to that section of Walker Avenue east of the intersection with Spring Street, or of those sections of Spring Street north and south of the intersection is impertinent to the inquiry.

The evidence is undisputed that all of the frontage, in the blocks or territory contiguous to that part of Walker Avenue west of the intersection where the accident occurred, is residential, except that on the north side occupied by the Ivory Store and the vacant store, not more than forty feet in all. Unquestionably a business district as defined by the statute does not exist there, and we so hold as a matter of law. Whether the evidence pertaining to residential occupancy is sufficient for a finding that a residential district, as defined by the statute, exists there, is immaterial in view of the evidence as to the speed of the truck.

It is provided in section 103 of chapter 407 of Public Laws 1937, that no person shall drive a vehicle on a highway at a greater rate of speed than is reasonable and prudent under the conditions then existing; that where no special hazard exists the speed of twenty miles per hour in any business district or twenty-five miles an hour in any residential district shall be lawful.

Here, there is no evidence that the truck was being operated in violation of this statute.

While the witness Edwards testified that the speed of the truck was at least twenty miles per hour and not over thirty miles, his testimony, taken in the light most favorable to plaintiff, amounts to no more than in his opinion it was twenty miles per hour. He was unwilling to venture an opinion as to how much more than twenty, and how much less than thirty the speed was, and frankly stated that "it is somewhat guesswork," and that "honestly" he does not know. If he does not know, a jury will not be permitted to hazard a guess on his testimony—which is all the evidence on the question. *Harrison v. R. R.,* 194 N. C., 656, 140 S. E., 598; *Johnson v. R. R.,* 214 N. C., 484, 199 S. E., 704.

Furthermore, the mere fact of the skidding of an automobile is not of itself such evidence of negligence in the operation of an automobile as to render the owner liable for an injury in consequence thereof. Skidding itself does not imply negligence. The doctrine of *res ipsa loquitur* in such cases does not apply. *Springs v. Doll,* 197 N. C., 240, 148 S. E., 251. See, also, *Butner v. Whitlow,* 201 N. C., 749, 161 S. E., 389; *Waller v. Hipp,* 208 N. C., 117, 179 S. E., 428; *Clodfelter v. Wells,* 212

N. C., 823, 195 S. E., 11; *Williams v. Thomas,* 219 N. C., 727, 14 S. E. (2d), 797.

Negligence is not to be presumed from the mere fact of injury or that the intestate was killed. *Mills v. Moore, supra,* and cases cited. See, also, *Pack v. Auman, ante,* 704.

Moreover, in the present case there is no evidence as to when the intestate got on the street, as to how long he had been on the street before being stricken, or where he was or what he was doing just before being stricken. The testimony is that the driver of the truck did not see him. Under such circumstances, it would be speculative to hold that this evidence is sufficient to show that the intestate was in a position where the driver of the truck could or should have seen him. *Pack v. Auman, supra.*

In the *Pack case, supra, Schenck, J.,* speaking for the Court, uses this language: "In the absence of any evidence of where on the highway the intestate was at the time of being stricken, or of when he got on the highway, or of how long he had been on the highway before being stricken, the plaintiff's case must fail. The mere fact that he was injured and killed does not constitute evidence that his injury and death were proximately caused by the negligence of the defendants. *Mills v. Moore,* 219 N. C., 25, 12 S. E. (2d), 661, and cases there cited."

To like effect is the decision in *Pace v. Transport Co.,* 216 N. C., 804, 5 S. E. (2d), 547. There, though the evidence is not stated, the factual situation on public highway shown in the record on appeal is not materially different from that here. Judgment as of nonsuit was affirmed in this Court in *per curiam* opinion.

The judgment below is

Affirmed.