Criminal prosecution tried upon indictment charging defendants, in two counts, (1) with the larceny of a bicycle of value less than twenty dollars, the property of H. L. Clark, and (2) with receiving said bicycle, knowing it to have been feloniously stolen, taken and carried away contrary to the form of the statute, etc.
In the trial court evidence for the State as disclosed in the record on this appeal tends to show these facts: On 18 August, 1942, about 5 o'clock in the afternoon, while H. L. Clark was moving, and on his way from Jacksonville to Greensboro, in this State, in a pick-up truck and trailer, with a bicycle owned by him tied on top of the load on the truck, and after passing through and beyond Sanford westwardly on the Boone Trail, a tire on the trailer blew out at the farm of G. L. Stroupe, making it necessary to have repairs made to the tire. He put the truck "under the shed or barn on the Stroupe place" — the big green barn on the left side of the highway, in which barn fodder and hay were stored. The bicycle "was taken off that night"; "it had been roped down." Clark told Stroupe about it, and he reported it to the officers. Clark next saw and identified the bicycle in June, 1943, about two months after the sheriff and a patrolman had found it, on Saturday night, 3 April, 1943, about 10:15 o'clock, in possession of defendants as they were tying it on the front bumper of a Ford coach parked on the right side of the highway about 150 feet beyond the barn from Sanford. Both tires of the bicycle were flat. It was "real dusty." Between the spokes there were small pieces of hay and fodder — blades of fodder hung in the spokes. The sheriff and the patrolman chanced to pass along the highway a few minutes before and saw the parked Ford coach. In it there was a Negro woman whom they later ascertained to be the wife of defendant LeRoy Cameron. She told them that the driver "got out and left the car and she didn't know where he was gone." The officers rode up the road two or three miles and came back, and, finding the defendants there in the dark with the bicycle as above stated, they got out and interrogated defendants about where they got the bicycle. They made contradictory statements in the course of questioning by the officer. Defendant LeRoy Cameron first said that the bicycle belonged to his brother, Robert, Jr., who was at home, when in fact Robert, Jr., was *Page 451 
present; that Robert "had left it there for him to pick up"; and that he, LeRoy, "got it right up here above the road in the bushes." Thereupon, at the request of the sheriff, LeRoy went with him to show him where he, LeRoy, found the bicycle — beside a fence that came down just about where the car was parked — an open spot — hard ground, little grass — with small cedar trees — but no fodder and no "marking" there. Defendant LeRoy Cameron also told the officers that the bicycle belonged to his brother Arthur who got it up at John Hubbard's home — out of the barn — and brought it down that afternoon on a truck and put it out there that night and had sent him, LeRoy, to get it — that "his brother told him to come out and get it."
The next day Arthur Cameron, brother of defendants, took the patrolman and showed him "where he left the bicycle." The place he showed was about 200 yards from where LeRoy Cameron took the sheriff the night before.
John Hubbard, as witness for the State, testified that while there were barns on the Tomberlin place on which he lived in a rented house, he did not farm, and did not rent or have a barn; that Arthur Cameron did not get the bicycle from him; and that he never saw it until it was shown in court.
The defendant Robert Cameron, Jr., was not heard by the officers to say anything when LeRoy Cameron said in his presence that the bicycle belonged to his brother, Robert, Jr., but later stated to the officers that the bicycle did not belong to him and that he had never seen it before.
While there is evidence that Arthur Cameron lived, and was tenant on the Stroupe farm until "last Fall," and that the defendants and their mother lived on the place at one time several years ago, the evidence is that the defendants now live "on a place . . . five or six miles from the Stroupe place."
G. L. Stroupe, as witness for the State, testified that defendants had worked for him off and on many different times, and that the other brother, Arthur, was working there all the time; that LeRoy had worked for him in the "brick at New River" and came up with him often on week ends; that Robert helps on the farm some, helps keep the yard — helps do anything that was to be done "when I could get him to work." This witness testified at length, but the sum and substance of his testimony is that through their brother the defendants had "legal access" to the barn, but that he would not swear that he had seen either one of them on his place for a week prior to the alleged theft, and that he doubted whether he himself was there a week before or not. He said, "I doubt it very seriously," and that he thinks that Junior was living on the place in August, 1942, "but I wouldn't swear that; I think he was." Then in answer to question by the court, "Is that your best recollection?" he answered, "Yes, sir." *Page 452 
Upon the trial below the court instructed the jury: "If you convict both under the first count, charging larceny, you need not consider the charge of receiving stolen property."
Verdict: Guilty of larceny as charged in the bill of indictment.
Judgment: Each to be confined in the common jail of Lee County for not less than eighteen months nor more than two years, and assigned to work the roads under the direction of the State Highway and Public Works Commission.
Defendants and each of them appeal to the Supreme Court, and assign error.
This is the determinative question on this appeal: Is the evidence, taken in the light most favorable to the State, sufficient to take the case against defendants to the jury on the charge of larceny, and to support against them a verdict of guilty of larceny? It arises upon defendants' exceptions to the refusal of the court (1) to grant their motions for judgment as in case of nonsuit under provisions of C. S., 4643, and (2) to give certain peremptory instructions. We are of opinion that the exceptions are well taken.
Larceny is the felonious taking and carrying away of goods and property of another with intent to deprive the owner of the use thereof and with a view to some advantage to the taker. S. v. Holder, 188 N.C. 561,125 S.E. 113.
The trial court properly held that because of the length of the period of time, nearly eight months, intervening between the date of the alleged theft of the bicycle and the date on which it was found in their possession there is from the bare fact of possession of the bicycle by defendants no presumption of fact of the guilt of either of the defendants under the doctrine of recent possession, and that the fact of such possession by them becomes only a circumstance to be considered in connection with other evidence bearing upon the guilt or innocence of the defendants. This appears to be in accordance with decisions of this Court. S. v. McFalls,221 N.C. 22, 18 S.E.2d 700, and cases cited. See also S. v. Rights,82 N.C. 675; S. v. Jennett, 88 N.C. 665; S. v. Hullen, 133 N.C. 656,45 S.E. 513; S. v. Reagan, 185 N.C. 710, 117 S.E. 1; S. v. Riley,188 N.C. 72, 123 S.E. 303. In the light of this ruling of the trial court, we are of opinion that evidence connecting defendants with the original taking *Page 453 
of the bicycle is lacking. That either of defendants was on the Stroupe farm or in vicinity of the Stroupe barn at the time of the taking is purely conjectural. The witness was unwilling to swear that he had seen them there, and the jury should not be permitted on testimony of the witness to speculate that they were there. Mitchell v. Melts, 220 N.C. 793,18 S.E.2d 406.
Moreover, while their possession may raise a suspicion as to the lawfulness of it, the evidence points to the fact that they obtained possession from other person than the owner of the bicycle. Hence, the verdict rests in the realm of speculation.
The judgment below is
Reversed.