GEORGE R. GRANT, TRUSTEE FOR MRS. REBECCA KENNEDY, INCOMPETENT v. DAVID STEPHEN ROYAL.

(Filed 20 May, 1959.)

1. **Automobiles § 33—**
   A motorist has the right to assume and act on the assumption that pedestrians crossing the street between intersections where no marked crosswalk has been established will recognize the motorist's right of way.

2. **Automobiles § 36—**
   There is no presumption of negligence from the mere fact that there has been an accident and an injury.

3. **Automobiles §§ 41l, 45— Evidence held not to disclose negligence in hitting pedestrian.**
   Evidence tending to show that ladies dressed in dark clothes attempted to cross a four-lane street between intersections at a place where there was no marked crosswalk, that the night was dark and rainy, that the pedestrians hesitated in the middle of the street and

then proceeded in the face of on-coming traffic, and that defendant's car bumped the ladies, knocked them down, but stopped before running over them, without evidence of speed, is insufficient to overrule nonsuit on the issue of negligence and does not present the issue of last clear chance, since the evidence discloses that defendant had only an instant in which to take evasive action after he discovered that the ladies had decided to continue across the street.

PARKER, J., dissenting.

APPEAL by plaintiff from *Hall, J.,* September, 1958 Civil Term, CUMBERLAND Superior Court.

Civil action to recover damages for personal injury. The plaintiff alleged the injury was proximately caused by actionable negligence in the manner in which the defendant operated his automobile on Ramsey Street in the City of Fayetteville. The defendant denied negligence, and pleaded contributory negligence as a defense and as a bar to recovery. The plaintiff, by reply, alleged the defendant was liable by reason of his negligent failure to avail himself of the last clear chance to avoid the injury.

The plaintiff's evidence at the trial, in substance, showed the following: Ramsey Street in Fayetteville runs north and south. It is of black asphalt construction, approximately 40 feet wide, with four marked lanes, the two on the east for north-bound traffic, and the two on the west for south-bound traffic. The sidewalks parallel to the street were lined with maple and oak trees, and the lights and light fixtures were all on the east and none on the west side of the street.

At the time of her injury, Mrs. Kennedy, then 85 years of age, lived on the west side of the street, 112 feet from its nearest street intersection. At the point of the accident there was no marked crosswalk for use by pedestrians. On the date of the injury, March 6, 1957, at about 7:45 o'clock at night, Mrs. Kennedy and a next-door neighbor, Miss Ida Garrett, age 70, attempted to cross Ramsey Street from west to east directly in front of Mrs. Kennedy's house. At the time, it was raining, and foggy, and the wind was blowing from the south. The ladies were dressed in dark clothes. Mrs. Kennedy carried a black umbrella.

Miss Garrett, a witness for the plaintiff, testified: "We were crossing Ramsey Street from Mrs. Kennedy's home to the east side. . . . When we started across the street, I looked to my left (north). We reached the middle of the street, I looked to my right, (south). . . . I saw cars approaching. These cars were approximately from 500 to 600 feet, as far as I could figure. I could not see the cars themselves, but I saw the lights . . . as far as I know Mrs. Kennedy and I con-

tinued to cross the street. . . . The next thing that I can recall after Mrs. Kennedy and I had started to cross the second half of the street and as we were walking as fast as we could the car hit us. I heard no horn, no brake, nothing, just the car hit us."

All the evidence tended to show the defendant's automobile going north bumped the ladies, knocking them down. The defendant's automobile stopped before running over them. "Mr. Royal . . . said that he did not see us when we stopped in the middle of the street, he saw us when we hesitated, but he thought we had turned back."

There was no evidence of speed—no skid marks. On cross-examination, Miss Garrett was asked about a statement she signed, as follows: "And started from the middle of the block to go directly across the street or to the east side of Ramsey Street. It was about 7:45 and the evening was cold and raining hard and the road was wet. . . . Yes, that was correct."

After the accident the defendant called an ambulance, sent the ladies to the hospital, and assured them they would be cared for.

At the close of the plaintiff's evidence the court entered judgment of involuntary nonsuit, from which the plaintiff appealed.

*Tally, Tally & Taylor, and Donald B. Strickland for plaintiff, appellant.*

*Nance, Barrington & Collier, By: James R. Nance, and Rudolph G. Singleton, Jr., for defendant, appellee.*

HIGGINS, J.   The record in this case leaves the impression that two estimable ladies, born in the horse and buggy days, failed fully to appreciate the speed of present day automobile traffic and the dangers incident thereto. On foot, they attempted to cross a four-lane street at a place where the authorities had made no provision for such crossing. Darkness, rain, wind, fog, clothing and umbrella blending with the color of the street surface, left the defendant insufficient time to avoid them after he could have discovered their intention to continue across his lane of traffic. They had stopped or hesitated in a place of safety from his intended movement. Even so, he stopped after merely bumping them without running over them.

Plaintiff and her witness were crossing from the unlighted side of the street at a place where the defendant had a right to assume and to act on the assumption that pedestrians would recognize his right of way and not obstruct it. *Garmon v. Thomas*, 241 N.C. 412, 85 S.E. 2d 589; *Tysinger v. Dairy Products*, 225 N.C. 717, 36 S.E. 2d 246; *Mitchell v. Melts*, 220 N.C. 793, 18 S.E. 2d 406. (See North Carolina

GRANT *v.* ROYAL.

Index, Vol. 1, pp. 264, 265, for full citation of cases.) No presumption of negligence arises from the mere fact there has been an accident and an injury. *Fleming v. Twiggs*, 244 N.C. 666, 94 S.E. 2d 821; *Merrell v. Kindley*, 244 N.C. 118, 92 S.E. 2d 671; *Mills v. Moore*, 219 N.C. 25, 12 S.E. 2d 661.

In this case there is no evidence of speed. All the evidence indicates the defendant had only an instant in which to take evasive action after he could have observed the ladies suddenly decided to hurry across the two lanes for north-bound traffic. The wonder is that complete success to avoid the accident failed by so narrow a margin.

The judgment of involuntary nonsuit in the court below is

Affirmed.

PARKER, J., dissenting.    Mrs. Ella Garrett Beard, a witness for plaintiff, asked defendant at the hospital after Mrs. Rebecca Kennedy had been carried there this question: "Why did you do it; didn't you see them?" He replied: "Yes, I saw them, but I thought they had stopped."

At the hospital this occurred in the presence of Miss Ida Garrett, her sister, Mrs. Burns and defendant: "My sister asked Mr. Royal why he run over us. He said that he did not see us when we stopped in the middle of the street, he saw us when we hesitated, but he thought we turned back. He did not say a thing about us as to when he saw us for the second time. But he did tell me that he saw myself and Mrs. Kennedy in the middle of the street and thought we had turned back, that is right. My sister heard it."

Ramsey Street is about 40 feet wide, and is practically level and straight, where the two ladies were struck. After Miss Ida Garrett was knocked down, she was next to the curbing, and Mrs. Kennedy was to her left. Other facts are stated in the majority opinion. These two elderly ladies were hurrying across the street as fast as they could from Mrs. Kennedy's home to attend prayer meeting at a neighbor's home.

Plaintiff, in reply to the defense of contributory negligence alleged in the answer, has invoked the doctrine of last clear chance. It seems to me from a study of the evidence and considering it in the light most favorable to plaintiff, that these inferences may be legitimately drawn therefrom: Defendant was negligent, Mrs. Rebecca Kennedy was guilty of contributory negligence, but that, although Mrs. Kennedy had negligently placed herself in a position of peril from which she could not escape by the exercise of reasonable care, the defendant knew, or by the exercise of reasonable care could have discovered,

her perilous position and her incapacity to escape from it before she was struck by his automobile, that the defendant had the time and means to avoid injury to her by the exercise of reasonable care after he discovered, or should have discovered, her dangerous position and her incapacity to escape therefrom, but negligently failed to use the available time and means to avoid striking her with his automobile, and for that reason struck and injured her. *Wade v. Sausage Co.*, 239 N.C. 524, 80 S.E. 2d 150.

I vote to reverse the judgment of nonsuit entered below.