GAY H. ROGERS, ADMINISTRATOR OF ESTATE OF G. HAROLD ROGERS
v. PERCY ALLEN GREEN AND GORDON WARD BALLOU

(Filed 23 March, 1960.)

**1. Death § 3—**

In an action for wrongful death, plaintiff must show both a failure on the part of defendant to exercise proper care in the performance of some legal duty which defendant owed plaintiff's intestate under the circumstances in which they were placed, and that such negligent breach of duty, acting in continuous sequence, produced the injury resulting in death, and without which it would not have occurred, under circumstances from which any man of ordinary prudence could have foreseen that such result was probable.

**2. Trial § 23a—**

There must be legal evidence of every material fact necessary to support a verdict, and a verdict may not be based upon mere speculation or possibility.

**3. Negligence § 23—**

What is negligence is a matter of law, and where the facts are admitted or established it is for the court to say whether negligence exists and if so whether such negligence was the proximate cause of injury.

**4. Automobiles § 411—**

Evidence tending to show that two pedestrians were walking in sand on the edge of a highway on their right side thereof, that one of the pedestrians slipped and accidentally struck the other with his hand, and that immediately thereafter the other pedestrian was struck by a vehicle, without evidence that the vehicle ever left the hardsurface, but with evidence to the contrary tending to show that it was travelling at a lawful speed in its lane of travel with its lights burning, and was stopped some 75 feet after the impact, *is held* insufficient to be submitted to the jury on the question of the driver's negligence.

APPEAL by plaintiff from *Craven, S. J.,* at Regular December 14, 1959 Civil Term, of BUNCOMBE.

Civil action to recover for alleged wrongful death of intestate of plaintiff.

At the time of trial the parties stipulated that the admissions in the answer of defendants constitute solemn judicial admission for all the purposes of the trial without the necessity of introduction of portions of either pleading. The admissions in so far as pertinent to this appeal are substantially these:

G. Harold Rogers, hereinafter referred to as plaintiff's intestate, died on 2 April, 1958; and that on said date, at approximately 8:50 P. M., defendant Percy Allen Green hereinafter referred to as Green, was operating a 1955 Chevrolet truck, bearing N. C. license No. 4583

SW for 1958, owned by defendant Gordon Ward Ballou, hereinafter referred to as Ballou, with his consent and permission, in a southerly direction on Atlantic Beach Road, a public highway, about 1500 feet south of Atlantic Beach Bridge in Carteret County, North Carolina.

And upon the trial Raymond Edward Gartman, hereinafter referred to as Gartman, as a witness for plaintiff, testified in pertinent part substantially as follows: "* * * On April 2, 1958, I was stationed aboard the Coast Guard Cutter Conifer. I knew Harold Rogers on that date. On the afternoon and evening of April 2, 1958, Rogers and I went to the movie uptown, and after the movie we was (were) going back to the ship, and we caught a ride with * * * * * * * * * one of the guys * * * by the name of Willis, and he put us out. We walked on the bridge, got to the bridge, crossed over to the right-hand side of the road in order that the guys from the ship going back to the ship would stop and give us a ride. After we crossed the bridge, we stepped into the sand, which was beginning to get in our feet, and we walked over further away from the road in order to get in the grass, which was filled with spurs; you know, the spurs and stuff, and they began to get in our socks and stick in us, so we decided to make it back towards some hard surface which was of felt on the side of the road. Before we reached back to the felt I remember that I was walking in the sand.

"Anyway, before we made it back to this place, we were walking in some sort of deep sand, I would say, and I remember slipping, sort of or kind of turning my ankle like, and as I did I bumped Harold with my left hand, and right after that is when I heard the impact of the truck that hit him, but at the time I didn't know that was what happened. I turned to see if somebody threw something out trying to scare us, or something, and as I looked over my right shoulder I didn't see anything of Rogers either. I turned back and looked. At this time I saw Harold laying face down 10 or 15 feet from the side of the road.

"After this, I looked and saw the fellow driving the pickup truck, he was doing, I would say, approximately 40 miles an hour somewhere, and he went on down the road and stopped and backed up. He came back to where Harold was laying, and said 'My God' * * *."

And the witness continued: "* * * At the time I heard the impact I was walking about 3 or 4 feet from the edge of the pavement. Rogers was walking on my left side closer to the pavement. Before I heard the impact, and as I slipped, I remember slinging my hand back and bumping his. I did not hear or see anything of the truck before I heard the impact. At that time, or right about then, Harold was sing-

ing a song that was sung in the show, and they had cars coming to-
ward us * * * I did not hear any sound of an automobile horn."

And the witness continued: "When I saw Mr. Rogers on the ground,
he was in front of me and off to the right. He was about 10 or 12 feet
in front of me and about 10 to 15 feet. I would say, off to the right of
the highway. I later determined that the defendant Green was the
person who was driving the truck * * *."

The witness continued: "As you step off the bridge in a southerly
direction, there was no speed signs there— at the place where this
impact happened there were only two buildings: Fleming's Restau-
rant on the left-hand side of the road going south, and a bread build-
ing, some sort of thing, on the right-hand side of the road going south.
There was a roadway going into the bread building and that is where
they had that felt I was talking about on the road * * * We were
walking in a southerly direction * * * Rogers and I were both wear-
ing our navy blue uniforms with white hat that night."

And again: "The right front fender was bent so the light would
angle off to the side of the road. That was the right-hand light."

And under cross-examination: As to "the right-hand side of the
road after you cross the bridge" the witness said: "was made of sand
and grass. The grass was about ankle high, and maybe in places it
got up to your knees. It had a lot of sand spurs in it * * *."

And as to traffic on the road, the witness said, "There were some
cars coming from the opposite direction * * * not a continuous line
as we were walking. These cars had their lights on * * *."

"I testified at Coroner's inquest. I was asked at that time about
Mr. Rogers 'You don't know whether he was walking on the hard
surface portion of the road or not?' At the time he was hit, I do not.
I do not know that * * * I slung my hand back, and bumped his hand
as I slipped with the sand * * * I might have slipped one or two times
while walking the 1500 feet on the sand * * * Before that we were
walking on concrete."

Patrolman W. J. Smith testifying as witness for plaintiff gave nar-
rative in substance as follows: "On April 2, 1958 * * * I investigated
a collision between a truck and a pedestrian at about 8:50 in the
evening. The highway at that point is a macadam road approximate-
ly 24 feet in width. The shoulders at that time had just been seeded
* * * It is rye grass they put on in that area. It had grown up fairly
high in spots * * * just the rye grass grown up in some places 18
inches to two feet high in spots on the shoulder. It is a perfectly
straight road * * * At that time the grass was grown up * * * it hadn't
been cut, I don't believe * * * since it was planted * * * I don't re-

member any traffic signs in that area. I know it is a 55-mile an hour zone now and I don't remember whether legally it has always been a 55-mile zone."

And the witness continued: "When I went out on that evening of April 2, 1958, I found a pedestrian had been struck apparently by a pick-up truck * * * Percy Allen Green said that he had been driving the truck, and * * * told me that he was headed south on the Atlantic Beach Road, at about 40 miles per hour, 35 to 40 miles per hour, and that he did not see anything until he was right on top of these two pedestrians. He said the right front of his truck struck one of the pedestrians and that he applied his brakes and stopped in his right lane of traffic. He told me that he backed up some few feet and stopped and jumped out of his pick-up truck and ran back to where the pedestrian was lying on the right shoulder of the road. At the time I got there the pedestrian * * * Rogers was lying approximately five feet, four or five feet, west of the paved portion of the road * * * I began questioning Percy Green again and along in the company with Gartman we went to a point that Percy told me his truck stopped after striking the pedestrian and Mr. Gartman agreed that this was approximately the vicinity of where the truck stopped. I stepped the distance from the point to where the body was lying and it was approximately 75 feet, 30 steps, * * * I asked Mr. Green if he ran on the shoulder of the road and he said he did not. I took Mr. Gartman and Mr. Green, and with the aid of a flashlight and the light of the oncoming cars, we went back to the approximate area that Gartman pointed out to us as being the spot where they were at the time of the collision. We searched thoroughly and were unable to find any tire tracks whatsoever on the shoulder of the road, off the pavement, and the only disturbance I could find there was a scuff mark just a few inches off the pavement of the road * * * one other thing I overlooked. At that time, when I arrived * * * I could see shadows * * * it is not a skid mark, but it is a mark that a tire makes just before it skids on the pavement, fades away I will say within a couple of hours after it is made, and I could see that in the right lane of traffic headed south, which led to the approximate point of the pickup truck. The shadows were south of and past the point of impact * * * I looked carefully and was unable to find any sand, dirt or debris on the hard surface of the highway at and along as to where I determined the impact to be. Mr. Green told me that he was meeting oncoming traffic from Atlantic Beach headed north and he was headed south. He said his lights were in low beam. I checked the truck * * * the brakes were good * * * both headlights were burn-

ing * * * although one of them was knocked at a crazy angle * * * There were clumps of weeds, most of it rye grass 18 to 24 inches high, where I discovered Mr. Rogers. It grew up fairly close to the edge of the road, 8 or 10 inches off the shoulder of the road. Those weeds had sand spurs on them. When I got there I got them in my shoes and socks * * * I found no tire marks whatsoever on the sand * * * The tire marks which I did find were right in the center of the lane * * * in the proper place. The terrain on the side of the road is uneven. There were no paths along the shoulder on April 2, 1958 * * * The speed limit at that area on April 2, 1958 was 55 miles per hour * * *."

And there was evidence tending to indicate that the 1500 feet referred to in the testimony was a part of the causeway leading from Morehead City to Atlantic Beach; that the men on the ship had been cautioned about walking along the causeway; that it was generally known that they should walk on the side facing the oncoming traffic; and that deceased had been stationed on the ship about four months.

At the close of plaintiff's evidence the defendant moved for judgment as of nonsuit. The motion was allowed. Plaintiff excepted and gave notice of appeal, and appeals to Supreme Court and assigns error.

*Elmore & Martin for plaintiff, appellant.*
*Uzzell & DuMont for defendant, appellee.*

WINBORNE, C.J.   When the evidence shown in the record of case on appeal here involved is taken in the light most favorable to plaintiff, giving to him the benefit of every reasonable inference to be drawn therefrom, as is done in considering demurrer to the evidence, this Court is of opinion that plaintiff fails to make out a case of actionable negligence for alleged wrongful death of plaintiff's intestate.

In an action for recovery of damages for wrongful death resulting from actionable negligence, the plaintiff must show: First, that there has been a failure on the part of defendant to exercise proper care in the performance of some legal duty which the defendant owed plaintiff's intestate under the circumstances in which they were placed; and, Second, that such negligent breach of duty was a proximate cause of the injury which produced the death,— a cause that produced the result in continuous sequence, and without which it would not have occurred, and one from which any man of ordinary prudence could have foreseen that such result was probable under the facts as they existed. *Whitt v. Rand,* 187 N.C. 805, 125 S.E. 84; *Mitchell v. Melts,* 220 N.C. 793, 18 S.E. 2d 406, and cases cited. Also *Murray v. R. R.,* 218 N.C. 392, 11 S.E. 2d, 326; *Mills v. Moore,* 219 N.C. 25 12 S.E.

2d 661, and cases cited. *White v. Chappell,* 219 N.C. 652, 14 S.E. 2d 843; *Reeves v. Staley,* 220 N.C. 573, 18 S.E. 2d 239; *Luttrell v. Mineral Co.,* 220 N.C. 782, 18 S.E. 2d, 412; *Morgan v. Coach Co.,* 225 N. C. 668, 36 S.E. 2d 263; *Mintz v. Murphy,* 235 N.C. 304, 69 S.E. 2d, 849, and cases cited. *Sowers v. Marley,* 235 N.C. 607, 70 S.E. 2d 670; *Wall v. Trogdon,* 249 N.C. 747, 107 S.E. 2d, 757; *Grant v. Royal,* 250 N.C. 366, 108 S.E. 2d 627.

There must be legal evidence of every material fact necessary to support a verdict, and the verdict "must be grounded on a reasonable certainty as to probabilities arising from a fair consideration of the evidence, and not a mere guess, or on possibilities." 23 C.J. 52. *Mitchell v. Melts, supra,* and cases cited.

If the evidence fails to establish either one of the essential elements of actionable negligence, the judgment of nonsuit must be affirmed. *Mitchell v. Melts, supra.*

And the principle prevails in this State that what is negligence is a matter of law, and when the facts are admitted or established, the court may say whether it does or does not exist. "This rule extends and applies not only to the question of negligent breach of duty but also the feature of proximate cause." *Hicks v. Mfg. Co.,* 138 N.C. 319, 50 S.E. 703; *Russell v. R. R.,* 118 N.C. 1098, 24 S.E. 512; *Clinard v. Elec. Co.,* 192 N.C. 736, 136 S.E. 1; *Murray v. R. R., supra.*

In the light of these principles applied to the factual situation in hand, however regrettable the death of plaintiff's intestate may be, the evidence is wholly insufficient to make out a case of actionable negligence against defendants. Negligence is not to be presumed from the mere fact of injury or that the intestate was killed.

The judgment of nonsuit must be

Affirmed.