FRANCES M. GRIFFIN, Administratrix of the Estate of COLEY GRIFFIN v. HOWARD ROGER PANCOAST and HOWARD ROGER PANCOAST, JR.

(Filed 2 May 1962.)

1. **Automobiles § 54f—**

   Where plaintiff offers no evidence in support of the allegation that the automobile was registered in the name of defendant, the plaintiff cannot benefit by the presumption of agency created by G.S. 20-71.1.

2. **Parent and Child § 7—**

   Ordinarily a parent is not liable for the negligent acts of his minor child.

3. **Automobiles § 55—**

   The family purpose doctrine relates to agency and obtains when the parent controls or has the right to control the operation of the car by his minor child, and whether the parent or the child owns the car is relevant only insofar as it indicates the right to control its operation.

4. **Same—**

   Evidence to the effect that defendant parent did not know that his son was the owner of the automobile in question until after the purchase was consummated, and that the parent never exercised any control over the use or manner of operation of the car by his son, is insufficient to raise the issue of the parent's liability for the son's operation of the car under the family purpose doctrine, notwithstanding evidence that at least a part of the purchase price and operating expenses were obtained from money furnished by the parent.

5. **Automobiles § 33—**

   A pedestrian crossing an intersection of streets as defined by G.S. 20-38(1) has the right of way when there are no traffic control signals at the intersection, notwithstanding that the intersection has no marked crosswalks for pedestrians.

6. **Same—**

   A pedestrian crossing a street between intersections at a place where

there is no marked crosswalk must yield the right of way to vehicular traffic. G.S. 20-174(a).

**7. Same—**

A pedestrian and a motorist, in accordance with which is given the statutory right of way, have the right to assume that the other will obey the rules of the road and accord the right of way to the one having that privilege.

**8. Same; Automobiles § 46—**

An instruction to the effect that a pedestrian has the right of way when he is crossing at a street intersection not having traffic control signals only if there is a marked crosswalk at the intersection is erroneous, and a repetition of the erroneous instruction, even though given in regard to an issue not answered by the jury, may be considered on the question of prejudicial effect in emphasizing the error.

**9. Appeal and Error § 42—**

Where an erroneous instruction as to the law in regard to one issue is repeated in regard to a subsequent issue, a correction of the error by the court solely in regard to the subsequent issue may not erase the prejudicial effect of the erroneous instruction on the prior issue.

SHARP, J., took no part in the consideration or decision of this case.

APPEAL by plaintiff from *Patton, J.*, September 18, 1961 Schedule B Civil Term of MECKLENBURG.

Plaintiff seeks damages for wrongful death and for hospital expense and pain suffered by her intestate when struck by an automobile operated by Howard R. Pancoast, Jr. (hereafter designated as defendant).

To support her claim she alleges these facts: Defendant was driving an automobile registered in the name of Howard R. Pancoast (hereafter designated as parent) and kept by him as a family purpose car. Defendant was operating the automobile as agent for parent. Defendant was driving the automobile southwardly on Graham Street in Charlotte. Graham Street is intersected by Stonewall Street. There are neither lights controlling traffic nor marked crosswalks at the intersection. Her intestate, crossing Graham Street at the intersection from east to west, was within a few feet of the sidewalk on the west side of Graham Street when he was struck by the automobile operated by defendant at an unlawful rate of speed. Defendant failed to keep a lookout or to control his vehicle or to give any warning of his approach to the crossing. He could and should have seen plaintiff's intestate crossing the street and could, by the exercise of reasonable care, have avoided intestate.

Defendants denied plaintiff's allegations of negligence, denied that defendant was the agent of parent, alleging that defendant was the

owner of the automobile. In addition they pleaded contributory negligence on the part of intestate in that he attempted to cross the street not at the intersection but at a point not marked as a crosswalk, entering the street without looking to see if the movement could be made in safety.

The parties stipulated that Graham Street runs in a northerly and southerly direction. Stonewall Street intersects Graham Street and runs in an easterly and westerly direction. There is no traffic control device at the intersection of Graham and Stonewall Streets. There are no marked pedestrian walkways at the intersection. Graham Street is approximately forty feet wide, with four traffic lanes, two for northbound traffic and two for southbound. Stonewall Street is approximately twenty-four feet in width east of the intersection and twenty feet in width west of the intersection. There are no marked traffic lanes on Stonewall Street, but it is a two-way street, one for westbound traffic, the other for eastbound. The maximum speed limit in the area is 35 m.p.h.

At the conclusion of the evidence, parent's motion for nonsuit was allowed. The court submitted issues to determine the negligence of defendant, contributory negligence of intestate, last clear chance, and damages. The jury answered the issue relating to defendant's negligence in the negative. Judgment was entered thereon, and plaintiff appealed.

*Bradley, Gebhardt, Delaney and Millette for plaintiff appellant.*
*Kennedy, Covington, Lobdell & Hickman and Bailey Patrick, Jr., for defendant appellees.*

RODMAN, J. Plaintiff offered no evidence to support her allegation that parent was the registered owner of the automobile operated by defendant. Because of that failure, she cannot benefit by the presumption of agency created by G.S. 20-71.1.

To establish her allegation that parent was responsible for the operation under the family purpose doctrine, she called parent as an adverse witness. He testified defendant, his son, was twenty years old when intestate was struck; that defendant was then a student at Davidson College; witness, from his earnings, maintained a joint bank account with his wife; she had authority to use this bank account for defendant's support and provide him with an allowance; defendant worked during his summer vacations; he had money of his own; he had his own bank account; parent did not know defendant was the owner of an automobile until after the purchase was consummated; parent never exercised any control over the use or manner of operation

of defendant's car; defendant never sought permission from parent to use the car; defendant may have used some of the money provided by parent in purchasing the automobile or in purchasing gas and oil for its use; parent had an automobile of his own which he used for business purposes, and maintained at his residence in High Point another automobile which he kept for the use of his family—his wife, a daughter, and defendant; defendant, while at college, kept his car at Davidson.

A parent is ordinarily not liable for the negligent acts of his minor child. *Lane v. Chatham*, 251 N.C. 400, 111 S.E. 2d 598; *Linville v. Nissen*, 162 N.C. 95, 77 S.E. 1096.

In the early history of automobiles when they were kept primarily for the enjoyment of the family, an apparent exception was engrafted on this general rule. Liability was imposed on the owner for the negligent use of a motor vehicle kept and maintained by a parent for the pleasure and use of the members of his household. This apparent exception is based on the theory that the member of the household operating the vehicle is doing so as the agent of the owner and subject to his control. Liability predicated upon the negligent use of such an automobile is merely an application of the rule of *respondeat superior*.

The law applied to motor vehicles so owned and used acquired the name of family purpose doctrine. Seemingly it was first recognized in this State in *Linville v. Nissen, supra*. There liability was denied because the agent was acting contrary to express direction. His use was unauthorized.

The family purpose doctrine is an established part of the law of this State. What the plaintiff must allege and prove to bring the doctrine into play has been repeatedly stated. *Manning v. Hart*, 255 N.C. 368, 121 S.E. 2d 721; *Lynn v. Clark*, 252 N.C. 289, 113 S.E. 2d 427; *Elliott v. Killian*, 242 N.C. 471, 87 S.E. 2d 903; *Hawes v. Haynes*, 219 N.C. 535, 14 S.E. 2d 503; *Vaughn v. Booker*, 217 N.C. 479, 8 S.E. 2d 603; *Robertson v. Aldridge*, 185 N.C. 292, 116 S.E. 742. To impose liability under the doctrine it is essential to establish that the party on whom liability would be imposed actually or impliedly authorized the use of the vehicle. It must be subject to his control. The test is not who owns the vehicle but control or the right to control. Since ownership presumptively indicates the right to control, it is frequently stated as one of the elements necessary for the application of the doctrine. But one may in fact exercise control and direct the use of property without in fact being the owner.

Plaintiff relies on *Goode v. Barton*, 238 N.C. 492, 78 S.E. 2d 398, and *Matthews v. Cheatham*, 210 N.C. 592, 188 S.E. 87. Those cases held that liability could be imposed upon a parent for the negligent

operation of a motor vehicle, title to which was vested in his minor child, when in fact the parent exercised control of the motor vehicle. Here plaintiff has failed to show that parent ever exercised or attempted to exercise control over the use of the automobile by defendant. The court correctly concluded plaintiff's evidence was insufficient to hold parent responsible for the operation of the automobile owned by defendant.

Plaintiff asserts error in the court's charge entitling her to a new trial as to defendant.

Her evidence is sufficient to establish these facts: Intestate walked north on the east side of Graham Street until he reached Stonewall Street. There he turned west to cross Graham Street. North of the intersection a railroad crosses Graham Street at grade. Defendant was traveling at a speed in excess of 35 m.p.h. when he crossed the railroad. As he crossed the railroad he lost control of his car, struck the curb, came back into the west lane, and without reducing his speed, struck intestate, when intestate was within two or three feet of the sidewalk at the southwest intersection of the street.

The evidence for defendant tends to fix his speed at less than the maximum and to establish the fact that defendant at all times had control of his vehicle. It is also sufficient to support defendant's allegation that intestate, at the time he was struck, was not crossing Graham Street at its intersection with Stonewall, but the collision took place some twenty or thirty feet south of the intersection, that intestate stepped from the west sidewalk of Graham Street into the southbound lane of traffic at a time when defendant's automobile was only ten to fifteen feet from him.

There was no evidence of a marked crosswalk anywhere on South Graham Street. The point of collision was therefore important in fixing the rights and duties of the parties.

Part 11, c. 20, of our General Statutes fixes the relative rights of pedestrians and motorists. In the absence of signals controlling traffic, the relative rights are prescribed by G.S. 20-173 and 174.

There were neither traffic signals nor marked crosswalks at the intersection of Stonewall and Graham Streets; nor were there marked crosswalks on Graham Street south of the intersection of Graham and Stonewall Streets. If intestate was crossing at the intersection, as defined in G.S. 20-38(1), of Graham and Stonewall Streets, he had the right of way. G.S. 20-173. That right was not affected by the failure to mark a place at the intersection for pedestrians to use in crossing. *Keaton v. Taxi Co.*, 241 N.C. 589, 86 S.E. 2d 93; *Gaskins v. Kelly*, 228 N.C. 697, 47 S.E. 2d 34. On the other hand, if intestate was not injured at the intersection but was struck when he stepped into

Graham Street at some point between Stonewall Street and the next southern intersection, defendant would have the right of way. G.S. 20-174(a); *Holland v. Malpass,* 255 N.C. 395, 121 S.E. 2d 576; *Grant v. Royal,* 250 N.C. 366, 108 S.E. 2d 627; *Hodgin v. Implement Co.,* 247 N.C. 578, 101 S.E. 2d 323. This right of way would, of course, be subject to the provisions of G.S. 20-174(e).

Both pedestrian and motorist have the right to assume the other will obey the rules of the road and accord the right of way to the one having that privilege. *Gamble v. Sears,* 252 N.C. 706, 114 S.E. 2d 677; *Carr v. Lee,* 249 N.C. 712, 107 S.E. 2d 544; *Fleming v. Twiggs,* 244 N.C. 666, 94 S.E. 2d 821; *Tysinger v. Dairy Products,* 225 N.C. 717, 36 S.E. 2d 246.

Appellant assigns as error portions of the charge relating to intestate's privilege in crossing Graham Street. The court said: "Now, under the law as the Court understands it and interprets it, at an intersection where there are no traffic controls, signals, in operation at the time, and a person walking crosses the street either in a marked crosswalk — and there is no evidence in this case that there is any marked crosswalk anywhere there — or an unmarked crosswalk, then that the pedestrian has the right of way, and it would be the duty of the operator of the motor vehicle to yield the right of way to the pedestrian; *but where a pedestrian is crossing a street or a roadway at a point other than a marked crosswalk, then the pedestrian is required to yield the right of way to vehicular traffic on the street or highway* . . ."

The language of the statute, G.S. 20-174(a), is: "Every pedestrian crossing a roadway at any point other than within a marked crosswalk *or within an unmarked cross-walk at an intersection* shall yield the right-of-way to all vehicles upon the roadway." (Emphasis added)

The italicized portion of the charge omits the italicized portion of the statute and because of the omission contradicts the preceding quoted portion. The prejudicial error in the italicized portion of the charge is emphasized by the stipulation: "There are no marked pedestrian walk ways at said intersection."

The statement that the motorist has the right of way when the pedestrian is crossing at a place other than a marked crosswalk is not limited to that portion of the charge quoted above. After the court had charged with respect to the duty imposed on defendant by G.S. 20-174(e), he said: "Nothing else appearing, though, where they are crossing at an unmarked crosswalk, the motorist has the right of way, and it is the duty of the pedestrian to yield the right of way."

In charging on the second issue, the court said: "Now, it was the duty of Coley Griffin to exercise ordinary care for his own safety;

and if you find from this evidence that he, in crossing South Graham Street, was crossing it at a point other than a marked crosswalk, then it was his duty to exercise ordinary care before he entered the street, to look both ways, and if the defendant's vehicle was in close enough proximity in the exercise of ordinary care to have been seen, it would have been his duty to remain where he was and yield the right of way to the defendant's car approaching on the street . . ."

It is true the portion of the charge just quoted was directed to the issue of contributory negligence, an issue not answered by the jury, and to that extent not prejudicial to defendant; but prejudice lies in the reiteration given the earlier statement that the motorist has the right of way unless the pedestrian is using a marked crosswalk and in failing to inform the jury that the marked crosswalks have reference only to crossings which the governing authority has provided for pedestrians between intersections.

After the court had completed his charge, counsel for defendant said: "In connection with the second issue, it was my recollection that the Court did not put an unmarked crosswalk on the same status as a marked one. I think you inadvertently used the words marked crosswalk and didn't also say unmarked." The court then said: "Let me try to clarify that once and for all, one more time. If I have got my tongue tangled up before this, disregard it. Where there is a marked crosswalk or an unmarked crosswalk at an intersection, then a pedestrian crossing that has the right of way over a motorist, but where a pedestrian crosses a road or street at a point other than at a marked crosswalk or within an unmarked crosswalk at an intersection, the motorist has the right of way . . ."

Where a judge has erroneously instructed the jury, he undoubtedly has the right, in fact, it is his duty, when the error is called to his attention, to correct it by accurately informing the jury what the law is. If the subsequent instruction is sufficient to clearly point to the error previously committed and state the law in such manner that the jury cannot be under any misapprehension as to what the law is, the error previously committed will not warrant a new trial. *Barnes v. House,* 253 N.C. 444, 117 S.E. 2d 265; *Wyatt v. Coach Co.,* 229 N.C. 340, 49 S.E. 2d 650; 3 Am. Jur. 635.

Here the court was specifically requested to correct his charge as it related to the second issue. No reference was made to the first issue submitted for the purpose of determining the negligence of defendant. A careful reading of the charge leaves us with the impression, and we therefore hold, that it was not sufficient to explain the law arising on

the evidence in this case in the manner contemplated by G.S. 1-180. *Templeton v. Kelley,* 217 N.C. 164, 7 S.E. 2d 380.

As to Howard Roger Pancoast

Affirmed.

As to Howard Roger Pancoast, Jr.

New trial.

SHARP, J., took no part in the consideration or decision of this case.