Richard L. STROHKORB, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 5573.

United States District Court
E. D. Virginia,
Norfolk Division.

May 16, 1967.

Israel Steingold, Maurice Steingold, Norfolk, Va., for plaintiff.

Roger T. Williams, Asst. U. S. Atty., Nelson W. Coward, Norfolk, Va., for defendant.

## MEMORANDUM

WALTER E. HOFFMAN, Chief Judge.

In this action under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), the question for determination is whether Lt. Wilbur R. Patterson was acting within the scope of his employment at the time and place of the accident. Stated otherwise, was he "acting in line of duty"? 28 U.S.C.A. §§ 1346(b), 2671, 28 U.S.C. § 2671; United States v. Campbell, 172 F.2d 500 (5 Cir., 1949); King v. United States, 178 F.2d 320 (5 Cir., 1949).

It is now settled law that this issue is determined by the law of the place of the accident, in this case—Virginia. Williams v. United States, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955).

The facts are not in dispute. From 8:00 A.M. on March 29, 1965, until 8:00 A.M. on March 30, 1965, Lt. Patterson was Duty Officer at the Naval Amphibious Base, Virginia Beach, Virginia. Otherwise described, he was the Officer of the Day in charge of Seal Team Units 1 and 2, a part of the Naval Operations Support Group. His customary hours when not serving as indicated above were from 8:00 A.M. until 4:30 P.M. It was his duty as Officer of the Day to receive and relay messages to higher commands. If anything of importance developed with respect to either Unit 1 or Unit 2, the inferior officers and enlisted personnel were required to report such events to Lt. Patterson. If Lt. Patterson left the Base for any reason during the 24 hour period, his replacement was required to reach him, if possible, by telephone to advise him as to anything significant.

Adequate eating facilities were available on the Base if Lt. Patterson elected not to go home for a meal. However, he was not required to eat on the Base. Additionally, government vehicles were at his disposal. Presumably, within the broad scope of Naval Regulations, a Duty Officer was probably authorized to take a government vehicle off the Base for a limited trip to his home and return.

At approximately 5:45 P.M. on March 29, Lt. Patterson, driving his personally owned vehicle, left the Base to go to his home in Virginia Beach, a distance of about 7 miles. The trip required about 20 minutes. He arrived home, ate dinner, and commenced his return trip to the Base. Five miles from the Base—and about 2 miles from his home—he became

involved in an accident at about 7:15 P.M., when his vehicle struck the plaintiff's vehicle from the rear. Before leaving the Base at 5:45 P.M., Patterson had delegated his responsibilities to a Petty Officer on duty with him, all of which was apparently an accepted practice whenever the Duty Officer left the Base.

While the record on the point is not clear, the Court assumes that Patterson was not reimbursed [1] for his mileage in going to his home for dinner while serving as Duty Officer.

■ Probably the most illuminating discussion of the entire subject matter is set forth in the exhaustive majority and dissenting opinions in Cooner v. United States, 276 F.2d 220 (4 Cir., 1960), applying New York law. Here, however, we must apply Virginia law. This is not a case in which Patterson received a message while at home to return to the Base at once. Without attempting to discuss the many situations which arise with respect to military personnel acting in the line of duty, it is sufficient to state that, under any test, the master's business must be in the process of being substantially furthered at the time of the accident. Tested by this principle, it is clear that Patterson, at the time and place of the accident, was not then acting in the line of duty. That he was required to return to the Base is conceded. Technically he remained the Duty Officer even while at home. In the comment following § 239, Restatement of the Law, Agency 2d, this appears:

"b. The fact that the instrumentality used by the servant is not owned by the master is a fact which may indicate that the use of the instrumentality is not authorized, or if authorized, that its use is not within the scope of employment. The master may authorize the use of a particular instrumentality without assuming control over its use as a master. The fact that he does not own it or has not rented it upon such

terms that he can direct the manner in which it may be used indicates that the servant is to have a free hand in its use. If so, its control by the servant, although upon his master's business, is not within the scope of the employment."

In Appalachian Power Company v. Robertson, 142 Va. 454, 129 S.E. 224 (1925), the Supreme Court of Appeals of Virginia quoted with approval the language of a Minnesota case as follows:

"And in determining whether a particular act is done in the course of the servant's employment, it is proper first to inquire whether the servant was at the time engaged in serving his master. If the act be done while the servant is at liberty from the service, and pursuing his own ends exclusively, the master is not responsible. If the servant was, at the time when the injury was inflicted, acting for himself, and as his own master, *pro tempore*, the master is not liable. If the servant step aside from his master's business, for however short a time, to do an act not connected with such business, the relation of master and servant is for the time suspended. Such, variously expressed, is the uniform doctrine laid down by all the authorities."

The mere fact that a negligent act was committed during the time of the servant's employment is not, standing alone, conclusive. The test in Virginia is whether the act was done by virtue of the employment and in furtherance of the master's business. Manuel v. Cassada, 190 Va. 906, 59 S.E.2d 47, 18 A.L.R.2d 395 (1950). See also: McNeill v. Spindler, 191 Va. 685, 62 S.E.2d 13 (1950); Abernathy v. Romaczyk, 202 Va. 328, 117 S.E.2d 88 (1960).

It was not Patterson's employment which brought about his journey to his home or otherwise created the exposure

---

1. If counsel are not in agreement on this point, the Court will permit additional evidence to prove or disprove this statement.

to the perils of his trip. His work as Duty .Officer did not bring about the necessity for travel. While he remained in the capacity of Duty Officer in the technical sense that he was subject to call even while at home, Patterson's trip to his home and return was merely to satisfy his personal desires to eat his evening meal with his family. The trip was not by virtue of Patterson's employ-. ment or in the furtherance of the government's business.

An order will be entered incorporating the Naval Regulations forwarded to this Court following the hearing, and thereafter dismissing the action. Counsel for defendant will prepare and present said order after opportunity for endorsement.