Robert S. **JOHNSTON**

v.

**UNITED STATES of America.**

**Civ. A. No. 11247.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Sept. 29, 1969.

On Motion for Reconsideration
Feb. 20, 1970.

———◆———

Smith, Cohen, Ringel, Kohler, Martin & Lowe, Atlanta, Ga., for plaintiff.

Charles L. Goodson, U. S. Atty., Beverly B. Bates, Asst. U. S. Atty., Atlanta, Ga., for defendant.

**2**

## ORDER

ALBERT J. HENDERSON, Jr., District Judge.

The question in this case is whether the alleged negligence of a National Guardsman, away from his home at a military base on temporary active duty, receiving per diem pay, who drives to lunch at a public eating house in a truck furnished him by the government for that purpose, can be imputed to the United States government under the Georgia law of respondeat superior. The court holds that it can.

Presently before the court are the defendant's motion for summary judgment, and the plaintiff's motion for partial summary judgment as to the question of law stated above. The pertinent facts have been stipulated by the parties:

1. Sgt. Long, a full-time member and air technician of the Tennessee Air National Guard stationed at Berry Field, Nashville, Tennessee, was on November 3, 1965 ordered to active duty for training pursuant to 10 U.S.C. 672(d), training to be in the C–124 simulator located at Dobbins Air Force Base, Georgia. Active duty status was by order to begin November 5, 1966 and continue through November 6, 1966.

2. Sgt. Long, together with other members of his unit also under orders to active duty pursuant to 10 U.S.C. 672(d), flew by military aircraft on November 3, 1966 from Berry Field, Nashville, Tennessee to Dobbins Air Force Base, Georgia.

3. From November 5, 1966 to the time that he departed Dobbins Air Force Base, Georgia on November 6, 1966, Sgt. Long was an employee of the United States, during which period of time he was subject to orders by the proper United States officials.

4. A per diem allowance was authorized to Sgt. Long for food and lodging by the United States beginning November 3, 1966, date of arrival at Dobbins Air Force Base, Georgia, and continuing through November 6, 1966, date of departure from Dobbins Air Force Base, Georgia.

5. At the time of the collision which is the subject of plaintiff's complaint, Sgt. Long was operating a vehicle which was made available to him and to members of his flight crew.

6. On November 5, 1966, Sgt. Long, having completed his flight training at Dobbins Air Force Base for that day, left the base at about 2:00 P.M. together with other members of his flight crew who had completed their training, and in the above vehicle returned to the Thunderbird Motel, U. S. Highway 41, Marietta, Georgia, where members of the crew, including Sgt. Long, had obtained lodging.

7. After arriving at the motel, Sgt. Long left the other members of his unit and desiring to eat lunch, having had nothing to eat that day, drove the vehicle from the motel and was en route to the Steak House Restaurant when he collided with plaintiff at approximately 2:14 P.M. on November 5, 1966 on U. S. Highway 41.

8. None of the above mentioned activities of Sgt. Long on November 5, 1966 were in derogation or violation of his official orders, but, on the contrary, his said activities, without considering the actual collision, complied with said orders and were not in violation thereof.

The pertinent provisions of the Federal Tort Claims Act provide that the district courts shall have exclusive ju-

risdiction of civil actions on claims for damages for the negligence:

> * * * of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b).

The controlling Georgia state statute states:

> Every person shall be liable for torts committed by * * * his servant, by his command or in the prosecution and within the scope of his business, whether the same be by negligence or voluntary.

Ga. Code Ann. § 105–108 (1968).

The leading Georgia case on the question whether the liability of servants can be imputed to their masters, when the servants are going to lunch, or home from work, or are engaged on a mission to accomplish their own purposes, is Stenger v. Mitchell, 70 Ga.App. 563, 566, 28 S.E.2d 885, 887 (1944):

> As a general rule, a servant in going to and from his work in an automobile acts only for his own purposes and not for those of his employer, and consequently the employer is not to be held liable for an injury occasioned while the servant is en route to or from his work.

See McGuire v. Gem City Motors, Inc., 296 F.Supp. 541, 543 (N.D.Ga.1969) (and cases therein cited). Thus, in the absence of distinguishing factors, the court would be forced to grant summary judgment for defendant United States, and, therefore, the question must be restated: Can this case be distinguished from the Georgia driving-to-and-from-work cases, and, if so, what factors distinguish it from those cases? The plaintiff argues convincingly that the case can be distinguished from this particular group of Georgia cases, and states generally that the circumstances surrounding the National Guardsman's active duty so distinguish it.

In comparison with the Georgia driving-to-and-from-work cases are the Federal Tort Claims Act cases construing the status of military men on their way to and from duty stations under military orders. The leading case in this area arose out of the Middle District of Georgia. Hinson v. United States, 257 F.2d 178 (5th Cir. 1958). Judge William A. Bootle denied recovery under circumstances involving a military officer en route, under orders, in his own automobile to his first duty assignment. 156 F.Supp. 831. In reversing the district court, Judge John R. Brown, speaking for the Fifth Circuit, indicated that, although control of the servant was not considered decisive, it was " * * * as adequately supplied here as is ever possible when driving servants are involved." 257 F.2d at 181. This was so because the Uniform Code of Military Justice made Capt. Westcott accountable to the Army for all of his actions, including the driving of his own private automobile, from the date of his entrance upon active duty.

> This was in no way altered by the indifference of the Army to the route or mode of travel selected. While "acting in line of duty," 28 U.S.C.A. § 2671, is generally equated with traditional notions of scope of employment, Cannon v. United States, 5 Cir., 243 F.2d 71, 73, the phrase reflects that *Congress had in mind, and so must we, the special factors characteristic of military activity and discipline.* (emphasis added).

257 F.2d at 181.

■ This discussion applies to Sgt. Long, the National Guardsman in the subject case. Long was on active duty, albeit temporary, from November 5, 1966 to November 6, 1966. He was under orders, and, for that reason, subject to the Uniform Code of Military Justice. Like Westcott, who had been given specific orders to travel to his duty station,

4

Long's activities, at the time of the collision, were stipulated to be in compliance with, and not in violation of, his orders. However, during his brief period of military duty, Long had been quartered in the Thunderbird Motel, a civilian motel, and was proceeding on U. S. Highway 41 from the motel, after a brief stop there while en route from his work, at the end of the working day, to a public restaurant, the Steak House Restaurant. In addition, Long was being given a per diem allowance to provide him with civilian food and housing. Therefore, the court concludes that he was serving a valid government purpose in proceeding from the Thunderbird Motel to the Steak House Restaurant in order to obtain a meal.

An interesting case, with a good deal of similarity, is Frazier v. Nabors, 273 F.Supp. 148 (E.D.Tenn.1967). Nabors was an employee of the United States Forest Service, stationed at Jackson, Mississippi. He accepted a transfer to Cleveland, Tennessee, for assignment to the United States Forest Service office there. In accordance with the Administrative Expense Act of 1946, 5 U.S.C. § 73b–1, 73b–3, and 73b–4, he was authorized, at government expense, to make a round trip from Jackson to Cleveland, and return, for the purpose of locating a home in Cleveland. In so doing, Nabors used his personal automobile, and was accompanied by his wife. While inspecting the neighborhood in the area of a prospective home, and while driving his own automobile, Nabors was involved in an accident. A claim was made against Nabors, and, alternatively, against the United States under the Federal Tort Claims Act. The court held that Nabors was acting within the course and scope of his employment with the United States at the time of the accident. It stated:

> He was engaged in the process of relocating from one place of employment to another, for the mutual benefit of himself and the United States, his employer. His trip was authorized and he was traveling on government orders on a mission deemed advantageous to the government. The accident occurred during his normal work hours and at a time when he was immediately engaged in the process of searching for a home, the very purpose for which he had been authorized to make the trip. This activity was considered sufficiently beneficial to the government that it authorized the trip, continued the compensation of Nabors and reimbursed him for his expenses incident to searching for a new home. Nabors was considered by the government in a duty status both for the purpose of continuing his regular compensation and for the purpose of reimbursing his additional expenses. That the government may have elected to permit him to use his own automobile and may not have sought to control the details of his movement, is not of critical significance, for it appears that the government had the authority to control the movements of Nabors to the extent that it elected to do so.

273 F.Supp. at 151.

Similarly, Long was attempting to eat, certainly to the mutual benefit of himself and the United States, his employer. Long's trip was authorized, as was Nabors' trip. He had been authorized to stay in a motel, and eat at public restaurants, and these activities were considered sufficiently beneficial to the government that it provided him with a per diem allowance in order to compensate him for his expenses in connection with these activities. This per diem allowance indicated that he was considered to be in a duty status at the time of the accident, at least for the purpose of compensation. Finally, the fact that the government did not seek to control his activities more closely is insignificant, in view of the fact that Long had been furnished with a vehicle, indicating that the government had voluntarily given him the discretion to eat where he chose. To emphasize, the fact of his active duty status made it clear that the government had the authority to control Long's move-

ments to a greater extent if it so desired, certainly to the extent of requiring him to accept meals and lodging at Dobbins Air Force Base.

This is not a case such as Strohkorb v. United States, 268 F.Supp. 526, 528 (E.D.Va.1967), aff'd, 393 F.2d 137 (4th Cir. 1968) (per curiam), which the government cites, or Moye v. United States, 117 F.Supp. 236 (S.D.Tex.1954), aff'd, 218 F.2d 81 (5th Cir. 1955). In each of these cases, there was found to be no benefit to the government from the activities carried on by the military men at the time of the accidents. In *Strohkorb,* an officer of the United States Navy was returning to the base after eating lunch at his home. He could have eaten on the base, but went home for his own convenience. In *Moye,* an Airman First Class negligently caused an accident while driving to lunch at a public restaurant. He was driving his own car, kept for his own convenience in traveling back and forth from his home to his work every day. The court, construing Texas law, found no benefit to the government in the fact that the airman had chosen to drive his own car to a public restaurant. Therefore, both the *Strohkorb* and *Moye* cases are distinguished from the instant case.

Finally, in Georgia law, contrary to the driving-to-and-from-work cases, are the cases espousing the "traveling salesman" rule. This rule, primarily one of workmen's compensation law, is that, when a servant, such as a traveling salesman, is traveling for the benefit of his employer, and while performing acts incident to his employment, including lodging or eating, he is considered to be within the course and scope of his employment continuously. *See, e. g.,* Thornton v. Hartford Accident and Indemnity Company, 198 Ga. 786, 790, 32 S.E.2d 816 (1945); Zurich Insurance Company v. Zerfass, 106 Ga.App. 714, 717, 128 S.E.2d 75 (1962); Railway Express Agency Inc., v. Shuttleworth, 61 Ga.App. 644, 7 S.E.2d 195 (1940). The court's opinion is fortified by this line of cases.

For the above reasons, the court finds that Sgt. Long was within the course and scope of his employment at the time of the accident. Therefore, summary judgment only as to this question, is hereby granted for plaintiff against the United States.

## ON MOTION FOR RECONSIDERATION

The defendant has urged reconsideration of the court's September 30, 1969, order, granting partial summary judgment to the plaintiff on the question whether Sgt. Long, the National Guardsman on temporary active duty who was involved in the collision, was within the scope of his employment under the Georgia law of respondeat superior. The court will consider each of defendant's contentions individually.

First, defendant has questioned the statement, appearing on page 6 of the order, that Long had been "furnished" with a vehicle. Defendant contends that this statement, particularly the use of the word "furnished", is not authorized by the stipulation of facts, which states, in pertinent part "* * * Sgt. Long was operating a vehicle which was made available to him and to members of his flight group." While the court has great difficulty in distinguishing between a vehicle furnished to Long and a vehicle made available to Long and to members of his flight crew, the court has examined the deposition testimony underlying the stipulations. It appears that a blue pick-up truck was either furnished or made available to groups of pilots, such as Long's group, which were going through a period of training on the flight simulator. Upon reconsideration, the court declines to change its language on page 6 of the order, for the reason that it appears the words "furnished" and "made available" are synonymous in the context used in the stipulations and deposition.

Second, the defendant points to the case of Frazier v. United States, 412 F.2d 22 (6th Cir. 1969), which reversed

the district court opinion, reported at 273 F.Supp. 148 (E.D.Tenn.1967), to which the court referred in its order. The reported order of the district court in the *Frazier* case did not control the order of this court, or compel its conclusions. Rather, this court decided the motion for summary judgment on the basis of the Georgia law of respondeat superior, as it had previously been interpreted concerning military personnel, in cases such as Hinson v. United States, 257 F.2d 178 (5th Cir. 1958), and the Georgia Workmen's Compensation "traveling salesmen" cases, as reported in Thornton v. Hartford Accident and Indemnity Co., 198 Ga. 786, 32 S.E.2d 816 (1945), and Zurich Insurance Co. v. Zerfass, 106 Ga.App. 714, 128 S.E.2d 75 (1962). This court considered the district court's order in the *Frazier* case to be persuasive because it was a well reasoned opinion, and because it applied the Tennessee law of respondeat superior in a manner similar to the application of the Georgia law of respondeat superior in this case. However, when the Sixth Circuit reversed the district court, in a 2–1 decision [1] is stated:

> The District Court relied on cases involving military personnel traveling in private vehicles from one duty station to another which hold that such travel was within the scope of employment. Those cases, however, are distinguishable because those employees were traveling pursuant to direct orders in substantial furtherance of the business of their employer.

412 F.2d at 25. For this reason, the Sixth Circuit opinion in the case of Frazier v. Nabors, *supra*, does not affect the September 30, 1969, order, which this court issued in this case.

Finally, the defendant questions this court's reliance on the fact that Sgt. Long was subject to the Uniform Code of Military Justice. It bases its contention on the recent Supreme Court case

of O'Callahan v. Parker, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969), which held that a military court-martial had no jurisdiction to try an Army sergeant who had committed an off-base civilian crime while on leave with an evening pass and while dressed in civilian clothes. Although Long was off base, he was driving a government vehicle under circumstances greatly different from those present in the *O'Callahan* case. Therefore, the court distinguishes that case on its facts.

For the reasons given, the court's decision, as indicated in its September 30, 1969, order, remains unchanged. Therefore, the motion for reconsideration is denied.

---

[1]. It should be noted that Judge Phillips of the Sixth Circuit dissented, and would have found the government employee within the scope of his employment. 412 F.2d at 25.